UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWERTRAIN PRODUCTION SYSTEMS, L.L.C.,

       Plaintiff,

v.                                                                    Case No. 09-12616
                                                                      Honorable Julian Abele Cook, Jr.

NEMAK OF CANADA CORPORATION,

       Defendant.

<u>ORDER</u>

On July 3, 2009, the Plaintiff, Powertrain Production Systems, L.L.C. ("Powertrain"), commenced this lawsuit, in which it accused the Defendant, Nemak of Canada Corporation ("Nemak"), of violating the terms of the parties' mutually agreed upon contract. On July 30th, Nemak filed a motion to dismiss and compel arbitration which remains unopposed by Powertrain as of this date.

I.

At all times that are relevant to this proceeding, Powertrain was authorized by the state governing authority to conduct its business as a manufacturer and supplier of automobile parts within the State of Michigan. Nemak, which is a corporation with headquarters in Ontario, Canada, produces automobile components for sale to manufacturers of motor vehicles.

In 2005, Nemak entered into an agreement with the General Motors Corporation ("General

Motors") to manufacture and supply HFV6 engine blocks for some of its motor vehicles. Prior to the installation of these engine blocks, each of them must undergo a so-called "cubing" process. However, inasmuch as Nemak does not put any of its engine blocks through this process, it issued a general request for proposals to obtain bids from those companies that could "cube" the engine blocks for eventual sale to General Motors.

On September 30, 2005, Powertrain submitted a proposal for "hyper-cubing, washing, leak testing and inspection of [General Motors]'s HFV6 cylinder block," which Nemak subsequently found to be acceptable. Nemak thereafter transmitted a purchase order to Powertrain, which contained the following language:

> This contract is based but not limited to P[owertrain] P[roduction] S[ystems'] offer dated September 30, 2005 and P[owertrain] P[roduction] S[ystems'] Compliance Declaration 9/29/05 which is considered an integral part of the contract and shall comply with all N[emak of] C[anada] C[orporation] and G[eneral] M[otors] HF V6 specifications. This contract is subject to Nemak of Canada Corporation Global [T]erms and Conditions.

The *Compliance Declaration*, which was referenced in this purchase order, contained a sentence ("**Supplier's standard terms and conditions will not apply.**" (emphasis in original)) that required the successful bidder for Nemak's engine blocks to abide by the "general purchasing conditions of Nemak of Canada Corporation. The word, "ok," which appears immediately thereafter was purportedly inserted by Powertrain. The *Global Terms and Conditions*, which was mentioned in the purchase order, provides that (1) "all matters in dispute under this agreement" must be submitted to arbitration[1] and (2) the terms of the contract are to be governed by the laws of Ontario, Canada.

---

[1] The arbitration clause reads as follows:

Arbitration. All matters in dispute under this agreement shall be referred to the arbitration of a single arbitrator, if the parties agree upon one, otherwise to a

2

According to Powertrain's complaint, Nemak "failed to abide by the terms of the parties' agreement" by not installing the expected casting capacity at its facility. In the opinion of Powertrain, this failure caused its production of the engine blocks to fall short of the volume that had been projected in Nemak's general request for proposals. When the parties were unable to resolve their differences, Powertrain commenced this lawsuit on July 3, 2009.

## II.

When reviewing a motion to dismiss, the court must determine if the complaint states "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). Moreover, the plaintiff's factual allegations must "raise a right to relief above the speculative level." *Id.* at 555. A claim has plausibility when its facts would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, the plaintiff's complaint must set forth more than a "sheer possibility" that the defendant's conduct was unlawful. *Id.* However, when an allegation is capable of more than one reasonable inference, it must be viewed in a light that is most favorable to the aggrieved litigant. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997).

Moreover, the "documents attached to the pleadings become part of the pleading and may

---

committee of arbitrators being comprised of one arbitrator appointed by each party, provided that if an even number of arbitrators results then a further arbitrator shall be appointed by the arbitrators named, and the award and determination of such arbitrator, or a majority of them as the case may be, shall be binding upon the parties hereto and their respective heirs, executors, administrators and assigns. Arbitration shall be in accordance with the Arbitrations Act, R.S.O. 1990, c.A.24 and amendments thereto.

be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). Specifically, the "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais and Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). When affidavits "'do nothing more than verify the complaint,' and when they 'add[] nothing new, but, in effect, reiterate[] the contents of the complaint itself,' they are not truly 'materials . . . outside the pleading.'" *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (citing *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993)). Also, any supplemental documents that are attached to those pleadings which seek dismissal do not convert the motion to one for summary judgment if they do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song,* 985 F.2d at 842 (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

In the case *sub judice*, the Court notes that Nemak has attached (1) purchase orders, (2) a *Compliance Declaration*, and (3) its *Global Terms and Conditions* to the currently pending motion. Generally, whenever courts consider matters outside of the pleading, the motion must be converted to one for summary judgment. *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 877 (6th Cir. 2002). However, the documents, which are attached to Nemak's dispositive motion, are purportedly terms and conditions from the parties' agreement. Significantly, Powertrain (1) refers to its agreement with Nemak throughout its complaint and (2) has based its claim for relief upon it. Thus, inasmuch as the contractual agreement appears to be central to Powertrain's claim in this lawsuit, the Court will evaluate the quality and relevance of these documents without converting this

4

matter into a motion for summary judgment.

III.

Nemak initially contends that - notwithstanding the choice of law provision within the parties' contract which provides that its terms must be construed under the laws of Ontario, Canada - the United States Federal Arbitration Act, 9 U.S.C. § 1 et seq., governs the enforceability of the arbitration clause.

In 1984, the Supreme Court opined that when the Federal Arbitration Act was enacted, Congress "declared a national policy favoring arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). However, the Court must first determine whether the federal law of the United States or the laws of Ontario, Canada govern the issue of arbitrability. As Nemak correctly notes, a similar question was confronted and determined by this Court in *Westbrook Int'l L.L.C. v. Westbrook Techs.*, 17 F. Supp. 2d 681 (E.D. Mich. 1998). In *Westbrook*, a Michigan corporation had entered into a contract with a Canadian corporation, the terms of which contained (1) a choice of law clause stating that the terms of the parties' agreement would be governed by the laws of Ontario, Canada, and (2) an arbitration provision. *Id.* at 681-82. When a dispute subsequently arose between the parties, the plaintiff filed a complaint to compel an arbitration that would resolve their disagreements. *Id.* Thus, the Court was faced with the question of whether to apply law of the United States (i.e., the Federal Arbitration Act) or the law of Ontario, Canada to determine the arbitrability of the parties' underlying disputes under their contract. *Id.* The Court concluded that "even in international agreements, the [Federal Arbitration Act] governs the arbitrability of claims and choice-of-law clauses will be applied to the substantive aspects of the arbitration proceedings." *Id.* at 683 (citing *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d

5

238 (5th Cir. 1986)).  Thus, the Court concluded that the Federal Arbitration Act dictated that the parties' dispute must proceed to arbitration.  *Id.* at 686; *see also Electrolux Home Prods. v. Mid-South Elecs., Inc.*, 2008 U.S. Dist. LEXIS 61416 at *6 (E.D. Mich. Aug. 11, 2008).

As mentioned in *Westbrook,* other jurisdictions have reached similar conclusions when faced with the same issue.  *See, e.g.*, *Coenen v. Pressprich & Co.*, 453 F.2d 1209, 1212 (2nd Cir. 1972); *Becker Autoradio U.S.A. v. Becker Autoradiowerk,* 585 F.2d 39, 43-44 (3d Cir. 1978).  The Supreme Court, in resolving a conflict between federal and state law, applied the same principles as found in *Westbrook* and concluded that "the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995).

In this case, the choice of law provision within the parties' contract provides that the laws of Ontario, Canada shall govern if and when a dispute arises over an interpretation of its terms. However, the Court must also determine what law to apply when resolving the question of whether this dispute belongs in an arbitral forum.  Based upon the above discussed authority and without the benefit of a response from Powertrain, the Court concludes that the Ontario, Canada law should be applied to substantive issues (including the arbitration).  However, the issue of arbitrability must be initially addressed by looking to the federal law of the United States (i.e., the Federal Arbitration Act) even though the parties in this case agreed that the arbitration is to be conducted "in accordance with" the Arbitrations Act of Canada.

IV.

Pursuant to the Federal Arbitration Act,

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

6

arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has held that this particular provision of the Federal Arbitration Act is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). The Act also states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that the arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

However, before directing the parties to arbitrate, "a court must engage in a limited review to determine whether the dispute is arbitrable; meaning [1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008). Moreover, broadly written arbitration clauses will be enforced save for presentation of "the most forceful evidence of a purpose to exclude the claim from arbitration." *Id.* (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003)).

Based upon Nemak's representations, the arbitration clause at issue here was included in the *Global Terms and Conditions* that was incorporated into the agreement between the parties through their purchase orders and the language within the *Compliance Declaration*. More importantly,

7

Nemak asserts that Powertrain never expressed any objections to the inclusion of the arbitration agreement into the parties' contract. Thus, there appears to be no dispute regarding the validity of the arbitration clause, as evidenced by Powertrain's failure to file a responsive pleading to Nemak's motion.

Moreover, the Court notes that the claim for relief in this legal action (i.e., breach of contract) is based upon a written agreement between the parties which is allegedly the basis for Powertrain's claim for damages. The arbitration provision states that "[a]ll matters in dispute under this agreement shall be referred" to arbitration. Based on the clear language of this clause, the Court concludes that Powertrain's prayer for relief hinges on its rights under the parties' agreement and falls squarely within the ambit of those matters within the arbitration clause. Hence, Nemak's request for an order that will dismiss the complaint and compel arbitration must be granted.

V.

Accordingly, for the reasons that have been set forth above, the Court grants Nemak's motion to dismiss and, in doing so, directs the parties herein to submit their issues of disagreement to arbitration forthwith.

IT IS SO ORDERED.

Dated: November 10, 2009                    S/Julian Abele Cook, Jr.
         Detroit, Michigan                          JULIAN ABELE COOK, JR.
                                                    United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 10, 2009.

8

s/ Kay Doaks
Case Manager

9